UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EVERY LINK MATTERS, CO.,

Plaintiff,

v.

KBG FOUNDATION INC. and
ANNETTE MAUGHAN,

Defendants.

CIVIL ACTION NO.
1:22-CV-03340-SEG

## O R D E R

This matter is before the Court on Defendants' motion to dismiss. (Doc. 17.) After careful consideration, the Court enters the following order.

## I.    Factual Background[1]

This case arises from a trademark dispute between two non-profit organizations that raise money and awareness for KBG syndrome—a rare genetic disorder. (Am. Compl., Doc. 14 ¶ 16.) Plaintiff Every Link Matters, Co. ("ELM") is a non-profit group with its principal place of business in Woodstock, Georgia. (*Id.* ¶¶ 1, 15.) Defendant KBG Foundation ("KBG") is registered under the laws of Maryland and has a place of business in Maryland.

---

[1] At the motion-to-dismiss stage, the Court must "accept all factual allegations in a complaint as true and take them in the light most favorable to [the] plaintiff[.]" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

(*Id.* ¶ 2.)  Defendant Annette Maughan ("Maughan"), KBG's Chief Executive Officer, lives in Maryland.  (*Id.* ¶ 3.)

The dispute in this case arose after KBG and Maughan became aware of the ELM name and logo and formed the belief that ELM had infringed on KBG's trademark.  Defendants thereafter took various measures to persuade ELM to change its name and logo.

ELM's common law trademark includes "a pair of brush strokes that intersect to form the shape of a heart, the brush stroke at the bottom right of the heart ending in a DNA helix."  (*Id.* ¶ 19.)  "In some instances, the ELM Logo is accompanied by the corporation's name, Every Link Matters, presented in stylized font with the words 'every LINK' positioned above the word 'matters.' The word 'every' is presented in lowercase, small, black font.  The word 'LINK' is presented in uppercase, large, red font.  The word 'matters' is presented in lowercase, mid-sized, black font."  (*Id.* ¶ 20.)

Defendants own U.S. Trademark Registration No. 6,481,777.  (*Id.* ¶ 22.) This trademark covers a design mark which "consists of a folded-over red ribbon with black and white shadings and a maroon border featuring the wording 'EVERY LINK MATTERS' in white; the middle left side of the ribbon begins turning into a DNA helix and finishes at the bottom as a stylized DNA helix."  (*Id.* ¶ 22.)

2

Both organizations maintain Facebook pages on which they conduct their business and fundraising activity.  Defendants operate a public Facebook page and a private Facebook group.  (*Id.* ¶ 9.)  To become a member of the private group, a person must apply and submit a questionnaire to Defendants. (*Id.*)  Plaintiff alleges that "[o]n information and belief," Defendants' private Facebook group "includes numerous Georgia residents who Defendants expressly approved for membership."  (*Id.*)  These Georgia residents are "regularly and continuously targeted with Defendants' promotions, advertisements, solicitations, and fundraising efforts."  (*Id.*)  In response to these "regular and continuous contacts," Georgia residents have donated money to KBG, publicized Defendants' activity, and purchased and received merchandise from Defendants.  (*Id.*)

Plaintiff, for its part, uses its Facebook page to promote Georgia-based fundraising events.  (*Id.* ¶ 37; Doc. 14-1.)  It also uses Facebook to promote companies that have donated to it, solicit donations, and share stories of families affected by KBG syndrome.  (Doc. 14-1.)

Between October 21, 2021, and June 13, 2022, Plaintiff and Defendants exchanged approximately forty messages via Facebook Messenger concerning their respective logos, names, and branding.  (*Id.* ¶ 36.)  On or about May 19, 2022, Defendants submitted a take-down request to Facebook, asking Facebook to remove Plaintiff's page.  (*Id.* ¶ 37.)  Plaintiff alleges that

Defendants' communication to Facebook knowingly misrepresented the scope of Defendants' trademark protection.  (*Id.* ¶¶ 38-39.)

On or about May 19, 2022, Facebook took down Plaintiff's Facebook page. (*Id.* ¶ 40.)  Plaintiff appealed Facebook's decision.  (*Id.* ¶ 41.)  On or about July 6, 2022, Facebook reversed its decision and restored access to Plaintiff's Facebook page.  (*Id.* ¶ 43.)  But the page was down for nearly two months.

Defendants thereafter continued to object to ELM's alleged infringement.  On or about August 1, 2022, Defendants' counsel sent Plaintiff's counsel a cease-and-desist letter, demanding that Plaintiff cease all use of the phrase "EVERY LINK MATTERS," "including but not limited to using that phrase as a name, a mark, a component of a mark, or a component of a domain name."  (*Id.* ¶¶ 45-47.)  The letter threatened further action should Plaintiff not comply by August 15, 2022.  (*Id.* ¶ 48.)

On August 19, 2022, Plaintiff ELM initiated this lawsuit.  Plaintiff seeks a declaratory judgement of non-infringement of trademarks.  It further asserts claims for tortious interference with business relations and unjust enrichment.

Defendants filed a motion to dismiss in which they argue that this Court lacks personal jurisdiction over them.  They further seek dismissal of Plaintiff's claim for unjust enrichment.  (*Id.*)  The motion to dismiss does not address the merits of the tortious interference claim.

## II.    Legal Standard

### A. Motion to Dismiss for Lack of Personal Jurisdiction (Rule 12(b)(2))

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Plaintiff may establish a prima facie case by presenting sufficient evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hosp.*, 926 F. Supp. 1106, 1112 (N.D. Ga. 1996). A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Walker v. NationsBank of Fla.*, 53 F.3d 1548, 1555 (11th Cir. 1995); *see also Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (noting that, if the defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."). The

Court construes the well-pled jurisdictional allegations in the complaint as true to the extent that they are uncontroverted by a defendant's evidence. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *Allegiant Physicians*, 926 F. Supp. at 1112; *Foxworthy v. Custom Tees, Inc.*, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).

### B. Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a complaint to be "plausible on its face," the facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wooten v. Quicken Loans, Inc.* 626 F.3d 1187, 1196 (11th Cir. 2010). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss entails a two-pronged approach: (1) a court must identify any allegations in the pleading that are merely legal conclusions to which the "assumption of truth" should not apply, and (2) where there are remaining well-pleaded factual allegations, a court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Under Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim on which relief can be granted.

## III. Discussion

### A. Personal Jurisdiction

Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Because "[a] court without personal jurisdiction is powerless to take further action," courts must rule on jurisdictional issues before considering the merits of a complaint. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). For the following reasons, the Court finds that it has personal jurisdiction over KBG but not over Maughan.

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford*

*Motor Co. v. Montana Eighth Judicial District Cour*t, 592 U.S. 351, 358 (2021). In the context of a corporation, a court may exercise general jurisdiction only when a defendant is "essentially at home" in the state. *Id.* at 352. Plaintiff does not contend that Defendants are subject to this Court's general jurisdiction.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.,* 592 U.S. at 358. A district court "undertakes a two-step inquiry in determining whether [specific] personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands*, 593 F.3d at 1257–58 (quoting *United Techs. Corp.*, 556 F.3d at 1274) (internal quotation marks omitted). These two inquiries cannot be conflated because Georgia's long-arm statute, O.C.G.A. § 9-10-91, "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Id.* at 1259.

### 1. Georgia Long-Arm Statute

The Georgia long-arm statute provides, in pertinent part, that a court may exercise personal jurisdiction over a nonresident who:

(1) Transacts any business within this state;

8

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

O.C.G.A. § 9-10-91(1)–(3).  The long-arm statute requires "that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction."  *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank*, 620 S.E.2d 352, 353 (Ga. 2005) (citation omitted).  We are to construe the Georgia long-arm statute "literally and give full effect to the breadth of its language." *Diamond Crystal Brands*, 593 F.3d at 1264.

Plaintiff ELM contends that the exercise of jurisdiction over Defendants is appropriate under O.C.G.A. § 9-10-91(3), because "it is unconverted that Defendants' alleged torts have caused injury in the state and Defendants regularly do and solicit business in Georgia."  (Doc. 18 at 1-2.)  The Court agrees as to KBG Foundation, but not as to Maughan.

Under subsection (3) of Georgia's long-arm statute, a defendant must commit a tortious injury "in this state."  O.C.G.A. § 9-10-91(3).  Damages from an allegedly tortious act are not sustained in Georgia simply because a plaintiff is based here.  *Smith v. Air Ambulance Network, Inc.*, 427 S.E.2d 305, 306 (Ga. Ct. App. 1993) (quoting *Atlanta Propeller Serv., Inc. v. Hoffmann GMBH & Co.*

9

*KG*, 382 S.E.2d 109, 111 (Ga. Ct. App. 1989)).  Further, "[a] tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury." *Scott v. Perez*, No. 1:22-CV-3308-MHC, 2022 WL 20689750, at *5 (N.D. Ga. Nov. 28, 2022) (internal quotations omitted); *Levine v. Am. Mensa, Ltd.*, No. 1:19-CV-04023-JPB, 2020 WL 13574113, at *3 (N.D. Ga. Aug. 20, 2020); *Empirical Regent, LLC v. Sunny Design & Bus. Consulting, LLC*, No. 1:19-CV-3253-MHC, 2020 WL 4557564, at *8 (N.D. Ga. Feb. 25, 2020).

Here, Plaintiff has sufficiently alleged that Defendants committed a tortious injury in this state, caused by their out-of-state conduct.  Plaintiff says it relies on its Facebook page "for its business activities" (Doc. 14 ¶ 54), including fundraising and the advertisement of Georgia-based events.  It further alleges that Defendants, seeking to hinder these activities, lied to Facebook about the scope of KBG's federal trademark protection, and that they did so "with the intent to injure Plaintiff financially and harm Plaintiff's reputation and goodwill."  (*Id*. ¶ 56.)  In reliance on Defendants' alleged misrepresentations, Facebook suspended ELM's Facebook page for almost two months.  (*Id*. ¶¶ 39-40, 57.)  In other words, Defendants essentially caused the shut-down of the platform on which Plaintiff conducted its competing fundraising efforts.  Plaintiff says that Defendants' actions in this regard "cost Plaintiff donations to its cause."  (Doc. 14 ¶ 58.)

As Plaintiff alleges that it is a Georgia-based, non-profit group, it is reasonable to infer that it was impeded in its fundraising activities in Georgia and that the alleged reduction in donations occurred here. Construing the complaint in the light most favorable to Plaintiff, while Defendants' alleged misrepresentations to Facebook may have occurred out-of-state, the actual injury occurred in Georgia. *Blue Star Kitchen, Inc. v. Manuel*, No. 1:20-CV-3886-CAP, 2021 WL 3423243, at *6 (N.D. Ga. Apr. 29, 2021) (noting that, according to the Georgia Court of Appeals, a tort occurs where the actual injury takes place). Plaintiff's allegations are sufficient at the pleading stage to establish that Defendants committed a tortious injury in Georgia.

We next consider whether Plaintiff meets the second requirement of subsection (3) by alleging facts sufficient to show that Defendants regularly do or solicit business or engage in any other persistent course of conduct in Georgia. O.C.G.A. § 9-10-91(3); *McLeod v. Ingram*, No. 7:16-CV-185 (HL), 2017 WL 6391482, at *3 (M.D. Ga. Dec. 14, 2017).

As to this point, Plaintiff alleges that Defendants do or solicit business in Georgia by "(a) regularly and continuously soliciting and collecting donations from Georgia residents; (b) regularly and continuously promoting and selling merchandise to Georgia residents; [and] (c) regularly and continuously operating online services accessible to, and specifically targeted at, Georgia residents." (Doc. 14 ¶ 8.) Plaintiff additionally alleges that

11

Defendants maintain a private Facebook group comprised of members who must apply to and receive approval from Defendants to join. (*Id.* ¶ 9.) The "numerous Georgia residents" who are members of this private platform are "regularly and continuously targeted with Defendants' promotions, advertisements, solicitations and fundraising efforts." (*Id.*) Plaintiff asserts that "[i]n response to these regular and continuous contacts, these Georgia residents have donated money to Defendants, publicized Defendants' activity, and purchased and received merchandise from Defendants." (*Id.*)

The foregoing allegations are sufficient to establish satisfaction of section (3) of the long-arm statute as to KBG. True, subsection (3) is not satisfied by mere allegations that a defendant operated a website accessible to Georgia residents or displayed an advertisement that is viewable in Georgia.[2]

---

[2] *See, e.g., Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) (plaintiff "failed to allege . . . that the defendants actually conducted . . . business in Georgia, much less on a regular basis" when defendants' "only alleged contact with Georgia consisted of displaying advertisements . . . on their Internet websites"); *Jordan Outdoor Enterprises, Ltd., v. That 70's Store, LLC,* 819 F. Supp. 2d 1338, 1345 (M.D. Ga. 2011) ("The Court cannot conclude that Defendants regularly solicit business in Georgia solely by operating a website that is accessible here and everywhere else . . . The websites do not target Georgia residents in any way."); *Barton Southern Co. Inc. v. Manhole Barrier Systems, Inc.,* 318 F. Supp. 2d 1174, 1177 (N.D. Ga. 2004) (reviewing defendants' website and determining that because "[t]here is nothing on the website showing an intent to reach out to persons living in Georgia, and there is no evidence that any Georgia residents have done business with MBS, either through the Internet or otherwise" the website "fail[ed] to furnish a Georgia contact adequate to support personal jurisdiction.").

Here, however, Plaintiff alleges that Defendants have "regularly and continuously targeted" Georgia residents with solicitations and ads, and that Georgia residents "have donated money" to KBG and "purchased and received merchandise" from KBG in response to these targeted efforts.  (Doc. 14 ¶ 9.)[3] Additionally, although KBG characterizes its business contacts with Georgia as "minimal," it has not presented evidence to rebut Plaintiff's assertions about the extent of its Georgia activities.[4]  Taken together, Plaintiff's allegations are sufficient to show at this stage that KBG regularly does or solicits business in Georgia, in satisfaction of the long-arm statute.[5]

---

[3] *See Gulfstream Aerospace Corp. v. Gulfstream Air Charter, Inc.,* No. 4:17-CV-26-RSB, 2018 WL 6069006, at *6 (S.D. Ga. Nov. 20, 2018) (noting that, while "the operation of a generally accessible website cannot alone be the basis for jurisdiction" under subsection (3), evidence that "Defendant solicited business, sold a good, or provided services within the state" could be sufficient for the exercise of personal jurisdiction) *cf. LabMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 845 (11th Cir. 2013) (defendant was not subject to personal jurisdiction under Georgia's longarm statute where it maintained a website accessible to Georgia residents on which it advertised its services, but it "d[id] not offer products or services for purchase online, and d[id] not target Georgia residents").

[4] KBG argues that Plaintiff fails to allege that "Defendants derive substantial revenue from Georgia, as required to confer jurisdiction under Georgia's long-arm statute."  (*Id.* at 10.)  But Plaintiff is not required to make such an allegation.  The criteria in the latter part of subsection 3 are framed in the alternative, and Plaintiff has sufficiently alleged that KBG regularly does or solicits business here.  *See* O.C.G.A. § 9-10-91(3).  That is sufficient.

[5] KBG appears to argue that subsection (3) of the long-arm statute requires the assertion of a nexus between the defendant's contacts with the forum state and plaintiff's cause of action.  *See* Doc. 19 at 4 (citing *Sterling Currency Group LLC*

*v. Maurer*, No. 1:12-CV-3022-RWS, 2013 WL 4011063, at *5 (N.D. Ga. Aug. 5, 2013), and arguing that defendants' contacts must be related to the plaintiff's cause of action).  Plaintiff disagrees.  (Doc. 18 at 11.)

 "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.,* 163 F.3d 1259, 1265 (11th Cir. 1998).  The Georgia Supreme Court's decision in *Innovative Clinical & Consulting Services, LLC v. First Nat. Bank of Ames,* discussed the proper interpretation of the long-arm statute and found that the court's earlier opinions "unduly limited the literal language of O.C.G.A. § 9-10-91."  620 S.E.2d 352, 353-54 (Ga. 2005).  The Eleventh Circuit explains that "the *Innovative Clinical* court intended to broaden the reach of the long-arm statute by stripping away certain limitations, not expressly contained in the statute, that various courts had injected into the statute over time." *Diamond Crystal,* 593 F.3d at 1260.  *Innovative Clinical* emphasized that courts interpreting the long-arm statute must respect its plain language.  620 S.E.2d at 355.  Courts thus may not write additional restrictions into the statute. *See HD Supply Constr. Supply Ltd., v. Mowers*, No. 1:19-CV-2750-SDG, 2020 WL 5774786, at *8 (N.D. Ga. Sept. 28, 2020) ("To satisfy the Georgia long-arm statute, the plaintiff must show that personal jurisdiction is permitted under one of the express statutory bases, *interpreted and applied literally*.") (emphasis added).

Defendants cite *Sterling Currency* in support of their nexus argument, quoting it for the proposition that "the [Defendants'] contacts must be related to the plaintiff's cause of action."  Doc. 19 at 4 (quoting *Sterling Currency*, 2013 WL 4011063, at *5).  *Sterling Currency*, in turn, quotes from *Barton Southern Co., Inc., v. Manhole Barrier Systems, Inc.*, 318 F. Supp. 2d 1174, 1179 (N.D. Ga. 2004).  And *Barton Southern* cites to *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).  Neither *Barton Southern* nor *Posner* discuss subsection (3) of the Georgia long-arm statute. *See Barton Southern*, 318 F. Supp. 2d at 1176, 1178 (discussing due process considerations); *Posner*, 178 F.3d at 1215 (considering whether personal jurisdiction existed under the Florida long-arm statute and was consistent with due process).  The Court thus declines to find that subsection (3) of O.C.G.A. § 9-10-91 contains an unwritten nexus requirement.

The same cannot be said for KBG's Chief Executive Officer, Defendant Maughan. Defendants argue that the pleading is devoid of any allegation that Maughan, outside of her role as KBG's CEO, "regularly does or solicits business, or engages in any other persistent course of conduct" in Georgia. Plaintiff responds that the amended complaint asserts all jurisdictional facts collectively against "Defendants," including Maughan. (Doc. 18 at 16.)

Defendants have the better argument here. Plaintiff would have the Court conflate Maughan with KBG for the sake of long-arm analysis. It may not do so. To the contrary, "when determining whether the Georgia long-arm statute authorizes jurisdiction, the Court must assess the actions and contacts of the particular defendant individually." *WAM USA, Inc., v. Fierros,* No. 1:22-CV-3131-AT, 2022 WL 20689729, at *5 (N.D. Ga. Dec. 19, 2022). Further, "[t]he fact that an employer 'regularly solicits business in Georgia or may derive substantial revenue from goods used or consumed in Georgia, is not equivalent to [an employee] doing so; this Court is required to analyze whether [the employee] personally, and on his own behalf, solicits business in Georgia or derives substantial revenue from goods used and consumed in Georgia." *WAM USA, Inc.,* 2022 WL 20689729, at *7 (*quoting Canty v. Fry's Elecs., Inc.,* 736 F. Supp. 2d 1352, 1369-70 (N.D. Ga. 2010)); *see also Hi-Tech Pharmaceuticals, Inc. v. Demelo,* No. 1:07-CV-1934-RWS, 2009 WL 901156, at *3, (N.D. Ga. Mar. 31, 2009) ("It is well established that [a] nonresident

individual cannot be subject to personal jurisdiction based solely upon acts in Georgia taken in his or her corporate capacity. . . Corporate officers are only individually subject to jurisdiction if engaging in business transactions on their own behalf and for their own substantial financial benefit, rather than engaging in strictly corporate acts on behalf of the corporation.") (internal quotations and citations omitted).  Plaintiff presents no contrary authority.

Here, the amended complaint cannot plausibly be read to assert that Maughan sold merchandise or solicited donations for herself; rather, the pleading identifies Maughan's role as that of an officer of KBG.  *WAM USA*, 2022 WL 20689729, at *7.  Maughan's single alleged tie to Georgia – the communication she allegedly sent to Facebook regarding ELM – is insufficient to show the regular doing or solicitation of business or a persistent course of conduct here.  Neither are facts pled to show that Maughan derived substantial revenue from activities in this state.  Thus, the Court may not exercise personal jurisdiction over Maughan under subsection (3) of the long-arm statute.  Plaintiff does not assert any other statutory basis for the exercise of personal jurisdiction as to Maughan.[6]  The claims against Maughan are DISMISSED without prejudice.

---

[6] "Where a reviewing court determines that 'it does not have personal jurisdiction over [a nonresident defendant] pursuant to the Georgia long-arm statute, the Court does not need to address whether or not exercise of personal jurisdiction over [that nonresident defendant] would violate due process.'"

## 2. Due Process Considerations

The Court must next address whether the due process clause of the United States Constitution permits the exercise of jurisdiction over KBG. Regarding the importance of "fair warning" in the due process analysis, the Eleventh Circuit has explained as follows:

> The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has "fair warning" that he may be subject to suit there . . . This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum . . . and the litigation results from alleged injuries that "arise out of or relate to" those activities . . . In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there.

*Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) (internal citations omitted).

Accepting Plaintiff's allegations as true, the Court finds that the Constitution is not offended by the exercise of the long-arm statute over KBG because KBG has, through its intentional conduct, created a substantial connection with Georgia. To determine whether asserting jurisdiction over a nonresident defendant comports with due process, we consider:

> whether (1) the plaintiff's claims arise out of or relate to one of the defendant's contacts with the forum state; (2) the nonresident defendant purposefully availed itself of the privilege of conducting activities within

---

*WAM,* 2022 WL 20689729, at *8 (*citing Burgess v. Religious Tech. Ctr., Inc.*, No. 13-cv-02217, 2014 WL 11281382, at *3 n.2, (N.D. Ga. Feb. 19, 2014)).

the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of fair play and substantial justice.

*Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275 (11th Cir. 2022).  Plaintiff has the burden of establishing the first two requirements.  *Del Valle*, 56 F.4th at 1275.  For Plaintiff to meet its initial burden, it must show that the defendant's "suit-related conduct" created "a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  If Plaintiff meets that burden, Defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).

First, the Court considers whether ELM's claims arise out of or relate to KBG's contacts with Georgia.  The relatedness prong of the due process inquiry "focuses on the 'causal relationship between the defendant, the forum, and the litigation.'" *Del Valle*, 56 F.4th at 1275 (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)).  Plaintiff need not establish direct causation—"that [their] claim came about because of the defendant's in-state conduct."  *Ford Motor Co. v. Montana Eighth Judicial District Court,* 592 U.S. 351, 362 (2021). But "[t]hat does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum."  *Id*. at 362.  The "'essential foundation' of specific jurisdiction" is a "strong 'relationship among the defendant, the forum,

and the litigation[.]'" *Id.* at 365 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Defendants say that their alleged contacts with Georgia – solicitations for donations and sale of merchandise – "have nothing to do with ELM, with ELM's Facebook page," or with the alleged misrepresentations that temporarily shut down ELM's social media platform. (Doc. 19.) They urge the Court to view their solicitation of Georgia residents as a separate factual strand, divorced from their alleged interference with Plaintiff's business activities.

As noted above, KBG's alleged Georgia contacts consist of efforts to raise money for KBG syndrome from Georgia donors. Its alleged tortious conduct consists of efforts to stymie Plaintiff from doing the same. Put another way, ELM was an unwanted competitor for donations, and KBG allegedly took actions directed at a Georgia plaintiff to curtail Plaintiff's ability to raise funds in Georgia, in service of Defendants' own fundraising efforts here. As such, there are sufficient allegations that the in-state contacts are related to the claim. The Court finds a sufficiently strong relationship among KBG, the forum, and the litigation. *Ford Motor Co.,* 592 U.S. at 353.

The second factor—purposeful availment—is also satisfied. There are two, applicable tests for purposeful availment: the effects test in *Calder v. Jones*, 465 U.S. 783 (1984), and the minimum contacts test. *See Del Valle*, 56

F.4th at 1275; *HD Supply*, 2020 WL 5774789, at *11. "Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state." *Del Valle*, 56 F.4th at 1276.

The *Calder* effects test is met when "the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *Del Valle*, 56 F.4th at 1276; *Licciardello*, 544 F.3d at 1286. "[E]ven a single act can support jurisdiction" if the act creates a "substantial connection" with the forum. *Licciardello*, 544 F.3d at 1285 (internal quotations omitted).

Under the minimum contacts test, the court assesses the nonresident defendant's contacts with the forum and asks whether those contacts:

(1) are related to the plaintiff's cause of action;

(2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and

(3) are such that the defendant should reasonably anticipate being haled into court in the forum.

*Louis Vuitton Malletier, S.A.*, 736 F.3d at 1357; *Del Valle*, 56 F.4th at 1276.

Plaintiff alleges facts sufficient to show that KBG purposefully availed itself of the forum state under the *Calder* effects test. First, as to intentionality, Plaintiff alleges that KBG committed tortious interference "purposefully, with malice toward Plaintiff, and with the intent to injure

Plaintiff financially and harm Plaintiff's reputation and goodwill." (*Id.* ¶ 56.) Second, Plaintiff sufficiently alleges that KBG's actions were "aimed at the forum state." *Licciardello,* 544 F.3d at 1286. Specifically, the complaint plausibly alleges that the tort was aimed at Georgia in that the goal was to shut down or hinder Plaintiff's competing fundraising efforts here.

Lastly, Plaintiff has plausibly alleged that KBG's actions "caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* Plaintiff asserts that KBG's intentional actions aimed at the Georgia-based plaintiff led to a two-month interruption in plaintiff's ability to fundraise over its social media platform. The effects of the intentional conduct were felt in Georgia where Plaintiff allegedly lost donations to its cause. (Doc. 14 ¶¶ 57-58.) Plaintiff sufficiently alleges that Defendants caused harm that they should have known would be experienced in Georgia. *Del Valle*, 56 F.4th at 1276. The *Calder* effects test is satisfied.[7]

The Court finally turns to the "fair play and substantial justice" factor, which requires it to consider: "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining

---

[7] The minimum contacts test is also satisfied because, for the reasons stated above, (1) KBG's contacts with Georgia are related to Plaintiff's cause of action; (2) KBG purposefully availed itself of the privileges of doing business in Georgia; and (3) KBG's contacts aimed at Plaintiff were such that it should reasonably have anticipated being called into court here. *De Valle*, 56 F.4th at 1276.

convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288; *Del Valle*, 56 F.4th at 1277.  KBG, which has the burden on this factor, has not argued or presented evidence to show that adjudication of this case in this Court would cause it hardship.  The other factors support the exercise of personal jurisdiction.  As to this forum's interest in adjudicating the dispute, Georgia "has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in [Georgia]." *Barbour Racing Int'l, LLC v. Exoto, Inc.*, No. 1:10-CV-2825-CAP, 2011 WL 13214400, at *5 (N.D. Ga. Mar. 16, 2011) (internal quotation omitted).  And ELM similarly has a strong interest in obtaining relief in its chosen forum.  The Court has not been presented with any factor that would cause exercise of personal jurisdiction here to offend traditional notions of fair play and substantial justice.  Having found the long-arm and due process inquiries satisfied, the Court concludes that it may exercise personal jurisdiction over KBG.  KBG's request to dismiss this case for lack of personal jurisdiction is therefore denied.

## B. Unjust Enrichment

Defendants move to dismiss Plaintiff's unjust enrichment claim.  (Doc. 17 at 14.)  "'The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated.'" *WESI, LLC v. Compass Envtl., Inc.*,

509 F. Supp. 2d 1353, 1363 (N.D. Ga. 2007) (quoting *Tidikis v. Network for Med. Comms. & Research, LLC,* 619 S.E.2d 481, 485 (Ga. Ct. App. 2005)). "To prevail on a claim for unjust enrichment, a plaintiff thus must ultimately prove (1) that it conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit." *Brooks v. Branch Banking and Trust Co.*, 107 F. Supp. 3d 1290, 1298 (N.D. Ga. 2015) (internal quotation omitted).

The Court agrees with Defendants that Plaintiff fails to state a claim for unjust enrichment. The complaint states that "Defendants were unjustly enriched by continuing their regular and continuous business activities, including those targeting Georgia residents, while Plaintiff's Facebook page was wrongfully suspended." (Doc. 14 ¶ 61). But crucially, Plaintiff has not pled any facts to suggest that it conferred any benefit on Defendants. ELM does not argue otherwise in its response and in fact agrees to dismiss its unjust enrichment claim. (Doc. 18 at 18.) The Court GRANTS Defendants' motion to dismiss the unjust enrichment claim for failure to state a claim.

## IV.  Conclusion

Defendants' motion to dismiss (Doc. 17) is GRANTED IN PART and DENIED IN PART. The Court DENIES the motion to dismiss for lack of personal jurisdiction as to KBG Foundation, GRANTS the motion to dismiss for lack of personal jurisdiction as to Maughan, and GRANTS the motion to

dismiss the unjust enrichment claim (Count III).  Counts I and II will proceed against KBG.  Defendant Maughan is dismissed without prejudice.  The Clerk is DIRECTED to terminate Maughan as a party defendant.

Discovery in this case will conclude on July 24, 2024.  (Doc. 21.)  Motions for summary judgment and *Daubert* motions are due by August 23, 2024.

The parties are reminded that this Court offers litigants a dispute resolution program by which parties may request mediation with a United States Magistrate Judge.  If the parties are interested in availing themselves of this procedure, they may file a joint motion requesting that the case be referred for mediation.

**SO ORDERED** this 23rd day of April, 2024.

SARAH E. GERAGHTY
United States District Judge